IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Angela Boland,<br><br>             Plaintiff,<br><br>vs.<br><br>Richland County,<br><br>             Defendant. | C/A NO.:<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, complaining of Defendant herein, respectfully alleges the following:

### PARTIES & JURISDICTION

1. Plaintiff, Angela Boland, is a citizen and resident of Lexington County, South Carolina.

2. Defendant, Richland County, is a county government entity in South Carolina.

3. This action arises under the Americans with Disabilities Act and Amendments thereto, 42 U.S.C. § 12101, *et seq.* and the Family and Medical Leave Act of 1993.

4. The Parties have substantial connections to Richland County, South Carolina; the events at issue occurred therein. Richland County is within the Columbia Division. Therefore, jurisdiction and venue are proper.

### FACTUAL ALLEGATIONS

5. Plaintiff began working for the Richland County Magistrate's Court in July 2006.

6. Until April 2022, Plaintiff worked as the Deputy Summary Court Law Clerk at the Dutch Fork office.

7. Around April 2022, for personal reasons, Plaintiff began splitting her time between working from home and in the office.

8. Judge David Scott agreed to allow Plaintiff to work partially from home.

9. At this time, Judge David Scott was the Chief Magistrate.

10. Judge Scott told Plaintiff that he had no issue with Plaintiff working partially from

1

home, and that she would not be punished for doing so, so long as Plaintiff kept up with her regular duties and tracked her hours worked.

11.     While working partially from home, Plaintiff kept up with her regular duties and tracked her hours work.

12.     Plaintiff returned to the office full time on May 9, 2022, and Chief Judge Scott informed her that she was being transferred to the Decker Blvd. office.

13.     Judge Scott falsely accused Plaintiff of falsifying her hours worked while working from home, and falsely denied that he had approved Plaintiff to use sick leave.

14.     On May 13, 2022, Plaintiff was demoted to Senior Summary Court Clerk and had her pay cut by approximately $10,000. Plaintiff was not issued a disciplinary action, confronted with performance issues, or provided with a reason for her demotion.

15.     As a result of the demotion, Plaintiff began seeing a counselor through Richland County's EAP program and was diagnosed with post traumatic stress disorder, acute stress, and anxiety disorder.

16.     On June 27, 2022, Plaintiff was moved again to the Waverly office. While there, Sandra Sutton was named the new Chief Magistrate. Chief Judge Sutton asked Plaintiff to stay on at the Waverly office as office manager to help with her transition to Chief Magistrate.

17.     The duties of office manager were part of Plaintiff's position before she was demoted in May 2022.

18.     Plaintiff agreed to stay on as office manager on the condition that she be reinstated to Deputy Summary Court Law Clerk. Her reinstatement took effect in September 2022.

19.     In November 2022, Plaintiff was out of work for two days dealing with some personal issues.

20. Plaintiff fully disclosed her need for leave to Judge Sutton.

21. Judge Sutton stated to Plaintiff that she had no issue with Plaintiff's need for leave at the time.

22. Nevertheless, on December 1, 2022, Plaintiff was informed that she was to be written-up, suspended for two days, and placed on a 2-month probation.

23. This event exacerbated the disabilities for which she was receiving counseling.

24. As a result, Plaintiff went out on FMLA leave for one month.

25. Plaintiff was not actually presented with the written disciplinary action that she was informed of on December 1, 2022, until December 12, 2023.

26. December 12, 2023, was one day prior to the beginning of Plaintiff's FMLA leave.

27. Plaintiff returned to work on January 17, 2023, and was approved for intermittent FMLA leave at that time.

28. Upon her return, Plaintiff requested to be moved back to Central Court as an accommodation for her disabilities. Defendant never responded to this request.

29. Plaintiff applied for the Deputy Court Administrator position in February 2023.

30. Defendant never acknowledged Plaintiff's application or interviewed Plaintiff for the position.

31. A less qualified individual, who did not have a disability and had not taken FMLA leave, was hired for as Deputy Court Administrator on March 3, 2023.

32. The individual hired for Deputy Court Administrator is an individual Plaintiff had previously trained.

33. After the new Deputy Court Administrator was hired, Plaintiff was required to perform many of the duties of Deputy Court Administrator, including developing training material,

training the office managers for eleven districts, and assisting with monthly reports, despite being demoted from this position.

34. On March 3, 2023, Plaintiff was called into a meeting with the Court Administrator, Stephanie Cameron, and Chief Judge Sutton and questioned about invoices for a judges' conference that she had forwarded to accounts payable with supporting documentation.

35. Out of the numerous invoices she was questioned about, there was one minor discrepancy on a mileage invoice Plaintiff submitted for another judge, which was easily reconcilable.

36. Plaintiff was again demoted to Senior Summary Court Clerk and had her pay cut effective March 11, 2023.

37. Plaintiff was also transferred back to the Central Court location.

38. One March 17, 2023, Plaintiff timely filed a grievance of her demotion pursuant to Defendant's grievance policy.

39. To date, Plaintiff has received no final determination to her grievance.

40. Between March 11th and April 10th of 2023, Plaintiff was bounced around between four district offices; was informed that she would be required to report to the newly hired Deputy Court Administrator.

41. Because of the ongoing retaliation and the affect the hostile and discriminatory work environment was having on Plaintiff's disabilities, she had no choice but to submit her resignation on April 19, 2023.

42. On April 20, 2023, Defendant terminated Plaintiff before her notice period had run.

## FOR A FIRST CAUSE OF ACTION
### (FMLA – Retaliation)

43. Plaintiff realleges the foregoing where consistent.

44. Plaintiff was a qualified individual under the FMLA, and Defendant is an employer as defined by the FMLA.

45. As described above, Plaintiff went on medical leave protected by the FMLA. Plaintiff returned from FMLA leave on January 17, 2023, and was approved for intermittent FMLA leave thereafter. Plaintiff was denied a promotion to a position for which she was qualified on March 3, 2023, in favor of a less qualified candidate who had not taken FMLA leave. Defendant then demoted Plaintiff on March 11, 2023, and Plaintiff was constructively discharged on April 19, 2023,

46. Defendant failed to promote, demoted, and constructively discharged Plaintiff in retaliation for taking FMLA protected medical leave. Defendant took these actions against Plaintiff for exercising her rights pursuant to the FMLA.

47. As a direct result and consequence of the willful violation of the FMLA by Defendant, Plaintiff lost out on a promotion, was demoted, and ultimately lost her job. Plaintiff is entitled to back pay, front pay, employment benefits, actual monetary losses, liquidated damages, attorney's fees, costs, pre and post judgment interest, tax offset for a lump sum award, equitable relief, and all other relief he may be entitled to under the FMLA.

**FOR A SECOND CAUSE OF ACTION**
**(ADA – Retaliation)**

48. Plaintiff realleges the foregoing where consistent.

49. Plaintiff engaged in activities protected under the ADA by asking for reasonable accommodation for her disability.

50. Defendant retaliated against Plaintiff by failing to promote her on March 3, 2023, demoting her on March 11, 2023, and ultimately discharging her from employment on April 19, 2023.

51. Plaintiff's protected activities are a but-for cause of the adverse employment actions described in paragraph 34 above.

52. Defendant took adverse employment actions against Plaintiff in violation of the Anti-Retaliation provision of the ADA and caused Plaintiff damages that she is entitled to recover as a result of the same, including actual damages in the form of lost wages and benefits, and compensatory and other intangible damages, including pain and suffering and emotional distress. Plaintiff is entitled to an award for pre and post judgment interest, tax offset for a lump sum award, equitable relief, attorney's fees, and costs.

### FOR A THIRD CAUSE OF ACTION
### (ADA – Discrimination)

53. Plaintiff realleges the foregoing where consistent.

54. Plaintiff had recognized disabilities for which she sought reasonable accommodations.

55. Defendant was on notice of Plaintiff's disability as of July 1, 2022.

56. Defendant knew and/or perceived Plaintiff as disabled.

57. Plaintiff is, and was at all times relevant hereto, qualified and able to do her job.

58. Defendant failed to accommodate Plaintiff when she made reasonable requests for accommodation.

59. Defendant failed to promote, demoted, and constructively discharged Plaintiff because of her disabilities.

60. Defendant's disability discrimination of Plaintiff, failure to reasonably accommodate Plaintiff, and failure to promote, demotion, and constructive discharge of Plaintiff's employment occurred because of Plaintiff's disability and are unlawful violations of the Americans

6

with Disabilities Act of 1990, 42 U.S.C. § 12101, and amendments thereto, for which Defendant is liable.

    61.    As a direct and proximate result of the violations of her civil rights under the ADA by Defendant, Plaintiff suffered actual damages in the form of lost wages and benefits, and compensatory and other intangible damages, including the loss of his earning capacity, pain and suffering, and emotional distress. Plaintiff is entitled to an award for pre and post judgement interest, tax offset for a lump sum award, equitable relief, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant herein for actual damages in an amount to be determined by a jury, for attorney's fees, where applicable, for costs of this action and any such other and further relief as this Court may deem just and proper.

        **CROMER BABB & PORTER, LLC**

        BY: *s/Chance Sturup*
            Chance Sturup (Fed # 13815)
            1418 Laurel Street, Suite A (29201)
            Post Office Box 11675
            Columbia, South Carolina 29211
            Phone   803-799-9530
            Fax      803-799-9533

        ***Attorney for Plaintiff***

November 19, 2024
Columbia, South Carolina